JONES, OBISPO CATÓLICO DE PUERTO RICO, DEMANDANTE Y APELADO, *v.* CANEJA ET AL., DEMANDADOS Y APELANTES.

APELACIÓN procedente de la Corte de Distrito de San Juan, Sección 1ª., en pleito sobre cobro de réditos.

No. 1909.—Resuelto en marzo 24, 1919.

OBLIGACIONES CONSTITUÍDAS EN MONEDA ESPAÑOLA—PAGO.—El pago de obligaciones constituídas en moneda española, debe hacerse en la especie pactada y y no siendo posible entregar dicha especie, en la moneda de plata u oro que tenga curso legal en esta isla.

ESTOPPEL.—No puede el demandado invocar en su favor y en contra del demandante la doctrina de *estoppel* basándose en ciertos actos del demandante, cuando se demuestra que si el demandante procedió en la forma en que lo hizo, fué a ello inducido por persona de quien trae causa el demandado.

Los hechos están expresados en la opinión.

Abogado de los apelantes: *Sr. José de Guzmán Benítez.*

Abogados del apelado: *Sres. Antonio J. Amadeo* y *Eduardo Acuña.*

EL JUEZ ASOCIADO SR. DEL TORO, emitió la opinión del tribunal.

William A. Jones, Obispo de la Iglesia Católica Apostólica Romana de Puerto Rico, entabló demanda contra Marcos T. Caneja, y otros, en reclamación de $639.45. La reclamación se basa en los siguientes hechos: Por escritura pública, otorgada en 1880, Manuel Díaz Caneja reconoció un censo por $2,842.11 españoles, a favor del Hospital de la Concepción y al rédito de cinco por ciento anual, garantizándolo con hipoteca sobre una finca de ochocientas cuerdas que se

describe debidamente y obligándose a satisfacerlo sin descuento de ningún género por contribución o cambio de moneda, u otro motivo. Manuel Díaz Caneja vendió la dicha finca a Eduardo González Caneja, quien a su vez vendió cuatrocientas cuerdas de ella a Marcos T. Caneja, cien a Juan Martinó y ciento seis a The Graham and Granger Fruit Co., reconociéndose en todas esas transferencias el censo en las condiciones expresadas. Desde el año 1900 los réditos del censo, sin el consentimiento del demandante, se venían pagando sobre un capital de $1,705.20 en vez de satisfacerse sobre $2,842.11 moneda española, o sean $2,557.80 oro, deducido el descuento del diez por ciento que se hacía a la moneda española.

Los demandados contestaron aceptando el hecho de la constitución del censo, pero alegando que lo fué por tres mil pesos mejicanos, y al rédito del cinco por ciento anual pagadero en la misma moneda. Luego, como materia nueva, alegaron tres defensas. En la primera sostienen, en resumen, que por virtud del canje de la moneda provincial a la moneda americana, el capital del censo quedó reducido a $1,705.26, y que tomando por base ese capital han venido pagando los réditos del censo. En la segunda alegan que en vista de que la administración del hospital, con el consentimiento y beneplácito de los anteriores obispos de Puerto Rico, había venido recibiendo los réditos a su satisfacción, el obispo actual está impedido de entablar esta demanda. Y en la tercera aducen que, en la hipótesis de que se adeudaran las sumas reclamadas, los réditos correspondientes a los años 1900 al 1911 habían prescrito con arreglo a lo dispuesto en el inciso 3°. del artículo 1867 del Código Civil.

Trabada así la contienda, se celebró la vista en la que se practicó la prueba ofrecida por ambas partes y, finalmente, la corte de distrito dictó sentencia declarando con lugar la reclamación de la parte demandante a partir del año 1911. Y contra esa sentencia interpusieron los demandados el presente recurso de apelación.

Hay dos cuestiones fundamentales a estudiar y a decidir en este caso, a saber: la clase de moneda en que se constituyó el censo y se pactó el pago de sus réditos, y el "estoppel".

La transferencia del antiguo censo por cuatro mil pesos que pesaba sobre la casa No. 8 de la calle de O'Donnell de esta capital a la finca rústica de ochocientas cuerdas a que se refiere la demanda fué autorizada por decreto del Provisor Vicario General en el cual, según se hizo constar en escritura pública que se otorgó al efecto y se inscribió luego en el registro de la propiedad, se permitió que el censo quedara reducido a tres mil pesos moneda corriente "equivalente a dos mil ochocientos cuarenta y dos pesos once centavos españoles sobre la finca rústica de que se trata en el párrafo 1°. debiendo, al efecto otorgar la correspondiente escritura obligándose a satisfacer al administrador del Hospital de Caridad el canon de un cinco por ciento anual o sean, ciento cincuenta pesos anuales, moneda corriente, sin descuento de ningún género ya sea por contribución, ya por cambio de moneda u otro motivo". La escritura, según la exposición del caso, tiene fecha 2 de diciembre de 1889.

Se fijó, pues, en el contrato, la suma de *tres mil pesos moneda corriente*, pero se especificó en el mismo su equivalencia a la moneda española, pactándose expresamente que los réditos se pagarían "sin descuento de ningún género ya sea por contribución, *ya por cambio de moneda* u otro motivo". Siendo esto así, el cambio operado en esta Isla por virtud del establecimiento de la moneda provincial y el canje de dicha moneda provincial por la americana, no afectó en lo fundamental al contrato. Sólo será necesario tener en cuenta la moneda oficial circulante en el momento actual, a los efectos de fijar, en su caso, su relación con la pactada, al tiempo de verificar el pago.

Según el artículo 1138 del Código Civil Revisado, "el pago de las deudas de dinero deberá hacerse en la especie pactada y no siendo posible entregar la especie, en la moneda

de plata u oro que tenga curso legal en Puerto Rico''. Con la sola sustitución de la palabra España por la palabra Puerto Rico, dicho artículo es igual al 1170 del antiguo Código Civil.

¿Cuál fué la especie pactada en este caso? La corte sentenciadora sostiene que la moneda española y la parte apelante admite ''que los dos mil ochocientos cuarenta y dos pesos once centavos equivalentes, según la escritura de dos de diciembre de 1889, a tres mil pesos mejicanos, son de moneda española'', mas arguye: ''sí, pero de *la especial provincial* que para la Isla de Puerto Rico creó el Decreto del Canje promulgado por el Gobierno Español en 7 de diciembre de 1895''.

Como puede verse de las mismas palabras de la parte apelante, la moneda provincial fué posterior en algunos años al contrato y en éste expresamente se consignó que no habría lugar a descuento por cambio de moneda y un descuento es en realidad de verdad lo que pretende la parte apelante en este caso.

Además, esta cuestión de los efectos del canje de 1895, ha sido estudiada y resuelta por esta Corte Suprema en el caso de *El Convento de las R. R. M. M. Carmelitas* v. *Silva*, 13 D. P. R. 148, así:

''Aun cuando la circulación de las monedas norteamericanas, francesas y mejicanas, estuvo autorizada en Puerto Rico, y a dichas monedas se fijó un valor legal en relación con la oficial, nunca tuvieron el carácter de moneda oficial, que estuvo reservado a la moneda fuerte de cuño español, autorizada su circulación por R. D. de 1857, hasta el año 1895, en que la moneda mejicana fué sustituída por la especial creada para Puerto Rico y cuyo valor no era igual al de la moneda española. El canje de la moneda decretado por la sección 11 de la Ley Orgánica se refiere únicamente a la moneda especial de Puerto Rico y no comprende la moneda propiamente española, ni ninguna otra clase de moneda extranjera, debiendo reputarse aquélla y éstas como mercancías, cuyo valor está sujeto a las oscilaciones del cambio. El pago de las obligaciones constituídas en moneda española, debe hacerse en la misma moneda, o en moneda

americana, pero no al tipo de canje establecido en la Ley Orgánica de Puerto Rico, sino al tipo corriente en plaza.''

Atendidos, pues, los términos en que aparece redactado el contrato y la ley y la jurisprudencia sobre la materia, no cometió la corte sentenciadora el error que se le atribuye al resolver que el pago debe hacerse en la especie pactada, moneda española, o su equivalente en la que circula actualmente en Puerto Rico.

Examinemos la cuestión referente al *estoppel*. En el acto de la vista declaró por la parte demandante el Presbítero Luis Rodríguez, Secretario del Tribunal de Cuentas del Obispado, y, entre otras cosas, dijo que examinando los libros del tribunal notó ''que había un pago incorrecto y la superiora del hospital venía cobrando menos de lo que realmente debía cobrar; que el declarante llamó la atención  *  *  *  y de ahí el origen de esta reclamación  *  *  *  . Que la anormalidad que dice el testigo encontró fué debida a una rebaja que se hacía al pagar los réditos; que pagaban menos réditos de lo que realmente debían pagar y, por consiguiente, como pagaban menos réditos era porque ellos suponían que el capital se reducía un cuarenta por ciento; que ellos suponían una reducción del capital, que esa rebaja le consta al testigo por el examen que ha hecho de los libros; que la rebaja aparece hecha por el Padre Caneja, con letra del Padre Caneja y de la Superiora mandada por el Padre Caneja que es tío de este señor; que en cuanto a si sabe las razones que tuviera el Padre Caneja para hacer eso, el testigo presenta el hecho; que la rebaja no tiene fecha en los libros''.

Sor Lucía Elorz, la superiora del hospital a cuyo favor se constituyó el censo, presentada por la propia parte demandada, declaró, entre otros extremos, a preguntas del abogado de dicha parte, así: ''Que según aparece del libro de los censos del hospital, que la testigo consultó en el mismo acto, al folio 225 existe una cantidad de cuatro mil pesos reducidos a dos mil ochocientos cuarenta y dos pesos once centavos provinciales, que con el descuento del cuarenta por ciento que-

daron reducidos a mil setecientos cinco dollars veinte centavos, con un rédito de ochenta y cinco dollars veinte y seis centavos''. Y luego a preguntas del abogado de la parte demandante, así: ''Que hay dos notas en el libro; que la primera
nota no sabe la declarante quién la puso; que la segunda
nota la puso la testigo; que no consignó la fecha; que sólo
recuerda que fué en los días en que comenzó la cuestión ésta;
que la declarante puso esa nota porque le pidieron del Obispado una nota del capital que debía el señor Caneja y la
declarante tuvo una equivocación y puso, cree, mil seiscientos
sesenta y siete dollars. Que la última nota de las que aparecen en el libro la puso la testigo porque le pidió una aclaración al Padre Caneja sobre el capital que tenía él a favor
del hospital y él quedó en 1,705 dollars, 20 centavos, dándole
la siguiente nota que la declarante copió de su puño y letra:
'NOTA: el capital primero eran dos mil ochocientos cuarenta
y dos once provinciales que con el descuento del cuarenta por
ciento quedó reducido a mil setecientos cinco dollars con veinte
centavos. Rédito anual ochenta y cinco, veinte y seis'. Que
la declarante copió en el libro esa nota que le dió el Padre
Caneja, para extender los recibos con más claridad y si él
debía seguir pagando más o menos. Que la declarante fué
a preguntar al Padre Caneja porque él era quien tenía el
capital y se lo quiso preguntar a él mismo. Que la primera
nota que hay en el libro la encontró la testigo ya puesta cuando vino; que a la testigo le parece que es letra del Padre
Caneja; que no lo puede contestar afirmativamente''.

Conviene hacer constar, además, que aunque son varios
los demandados en este pleito, es sólo el demandado Marcos
Tomás Caneja el que desde 1908 venía satisfaciendo los réditos del censo, según consta de una carta que dirigió a la
superiora del hospital el 22 de diciembre de 1915.

Siendo esas las circunstancias del caso, no creemos que
la parte demandada esté en condiciones de invocar en su favor la doctrina de ''estoppel''.

Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.

> *Declarado sin lugar el recurso y confirmada la sentencia apelada.*

Jueces concurrentes: Sres. Asociados Wolf, Aldrey y Hutchison.

El Juez Presidente Sr. Hernández no intervino en la resolución de este caso.